IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA PHILLIPS, et al., | : | CIVIL ACTION |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA HOUSING | : | No. 00-4275 |
| AUTHORITY, et al., | : | |
|     Defendants. | : | |

MEMORANDUM AND ORDER

Schiller, J.                                                                                                 December 20, 2005

This class action lawsuit concerns Defendants' alleged violations of the "welfare-to-work exclusion," a federal law that requires certain increases in household income be excluded when determining tenant rents. This Court previously approved the parties' proposed settlement agreement ("Agreement"), *see Phillips v. Philadelphia Housing Authority*, Civ. A. No. 00-4275, 2005 WL 1025151 (E.D. Pa. May 2, 2005), and approved Plaintiffs' initial petition for attorneys' fees from the commencement of this litigation through September 16, 2003, *see Phillips v. Philadelphia Housing Authority*, Civ. A. No. 00-4275, 2005 WL 1899504 (E.D. Pa. Aug. 8, 2005). Pursuant to Paragraph S of the Agreement, Plaintiffs now submit a supplemental petition seeking $116,450.50 for attorneys' fees incurred from September 17, 2003 through the effective date of the Agreement, June 2, 2005. For the reasons that follow, the Court awards attorneys' fees in the amount of $112,455.50.

I.   BACKGROUND

Plaintiff class, who bring this litigation under 42 U.S.C. § 1983, consists of current and

former Philadelphia Housing Authority ("PHA") tenants who aver that their monthly rents were incorrectly calculated when Defendants, in contravention of federal law, assessed those rents without excluding income from Plaintiffs' employment training programs. *See Phillips*, 2005 WL 1025151, at *1. Plaintiffs estimate that 3,200 tenants failed to receive an Earned Income Disregard or Earned Income Disallowance ("EID") for which they may have been eligible. *Id.* In August of 2004, following protracted litigation, the parties submitted a proposed settlement agreement to the Court for approval. (*See* Joint Mot. for Approval of Settlement Agreement Ex. 1 [hereinafter "Agreement"].) A fairness hearing was held on April 4, 2005, and the Court soon after approved the Agreement as fair, reasonable, and adequate. *See Phillips*, 2005 WL 1025151.

The Agreement sets forth a review process for determining which tenants should have received EIDs. *Id.* at *2. The process requires PHA to contact members of two settlement classes, "Current Residents" and "Former Residents," about their potential eligibility for an EID. *Id.* at *1-*2. PHA will review all available, relevant documentation concerning the work histories, rent payments, and training programs of each class member and then, using specially designed EID rent calculation forms, PHA will determine whether the Current or Former Resident was overcharged. *Id.* If so, PHA will reimburse the overcharge amount to that individual, in the form of either a rent credit or a refund. *Id.* The Agreement also provides that PHA will henceforth comply with federal EID mandates and provide EID training to all employees involved in rent calculations. (Agreement ¶¶ F, G.)

Paragraph S of the Agreement addresses the matter of attorneys' fees. This paragraph divides the attorneys' fees and costs incurred by Plaintiffs into two categories: (1) fees incurred from the commencement of this litigation through September 16, 2003; and (2) fees incurred from September

17, 2003 through the effective date of the Agreement, which is June 2, 2005.[1] (*Id.* ¶ S.) With respect to the former category, the parties agreed that PHA would pay class counsel a flat sum of $230,000. (*Id.*) Based on an independent assessment of the reasonableness of this sum, the Court awarded the full amount to class counsel. *Phillips*, 2005 WL 1899504, at *6. At issue here are the fees incurred from September 17, 2003 through June 2, 2005. On August 30, 2005, Plaintiffs submitted the requisite supplemental motion seeking $116,450.50 in attorneys' fees. (*See* Pls.' Supplemental Mot. for Award for Att'ys' Fees [hereinafter "Pls.' Suppl. Mot."].)

Class counsel notified class members that they would be filing a motion for approval of the initial $230,000 sum, as well as a supplemental fee award. (*Id.* Ex. J (Aff. of Ruthellen Landau on Notice).) This notice, sent by first class mail with postage prepaid, anticipated a supplemental fee petition of approximately $90,000. (*Id.* Ex. J ¶¶ 1-2; *see also id.* Exs. J-1, J-3 (Notice of Claim for Att'ys' Fees and Costs).) As of August 30, 2005, class counsel had returned approximately 200 calls from class members in response to the notice. (*Id.* Ex. J ¶ 4.) None of those callers expressed an objection to the request for attorneys' fees, nor has any class member requested additional

---

[1] "Effective Date" is defined in Paragraph L of the Agreement as follows:

This Settlement Agreement shall become effective on the date by which (1) the condition precedent described in Paragraphs D and J have occurred; (2) the settlement is finally approved by the Court in all respects; (3) the Court has entered a Final Order and Judgment, as described herein; and (4) any and all appeals from the Final Order and Judgment or review proceedings thereof have been finally determined by the highest court before which appellate review is sought and in such final appeal the Final Order and Judgment is ultimately affirmed in all material respects or, if no appeals therefrom have been taken or other review proceeding instituted, the applicable time to appeal therefrom or seek review has expired (i.e. 31 days from the date of the Final Order and Judgment).

(Agreement ¶ L.) Thus, the effective date of the Agreement is June 2, 2005, which is 31 days after the Final Order and Judgment of May 2, 2005.

information about the supplemental fee petition. (*Id.* Ex. J ¶¶ 4-5.) Moreover, no class member has filed written objections to the fee claim to date.[2] (*Id.* Ex. J ¶¶ 6-7.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(h) provides that "[i]n an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by law or by agreement of the parties . . . ." FED. R. CIV. P. 23(h) (2005). In general, a party requesting fees must demonstrate the reasonableness of its request by submitting evidence supporting the hours worked and rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Moreover, in the context of class action settlements, a thorough judicial review of fee applications is required. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir. 1995); *see also Smith v. First Union Mortgage Corp.*, Civ. A. No. 98-5360, 1999 WL 1081362, at *2 (E.D. Pa. Dec. 1, 1999) ("The court has an obligation to review the reasonableness of attorney fees in class action settlements even in the absence of any objection and whether they come from a common fund or will otherwise be paid."). As "[t]he determination of attorneys' fees in class action settlements is fraught with the potential for a conflict of interest between the class and class counsel . . . the district court must protect the class's interest by acting as a fiduciary for the class." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005) (citations omitted); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (stating that court should preserve integrity of Rule 23 and

---

[2] On June 13, 2005, the Court received a request for an extension of time to file objections from a purported class member. The Court granted the request and ordered that objections be filed by July 6, 2005. (Order of June 15, 2005.) To date, the Court has received no objections.

the legal profession by avoiding an award of windfall fees).

## III. DISCUSSION

Class counsel seeks $116,450.50 in attorneys' fees for work performed from September 17, 2003 through June 2, 2005. Defendants oppose Plaintiffs' supplemental fee petition and argue that class counsel's fee award should be reduced by $44,560.83. Specifically, Defendants object to fees for: (1) time spent determining a remedy for class members who appeared for a cancelled December 20, 2004 hearing; (2) time spent on unnecessary matters, including setting up a computer database, calling class members, and reviewing client files; (3) redundant activities performed by multiple attorneys; and (4) lead class counsel Michael Donahue's new higher hourly rate. (Defs.' Objections to Pls.' Supplemental Att'ys' Fee Petition [hereinafter "Defs.' Objections"] at 2-7.) The Court will determine the reasonableness of Plaintiffs' request with these objections in mind.

### A. Appropriate Method for Calculating Attorneys' Fees

In class actions, a court may calculate attorneys' fees using either the lodestar method or the percentage-of-recovery method. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998). A district court has wide discretion when selecting which method to employ. *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995). The percentage-of-recovery method awards class counsel a fixed portion of the settlement fund. This method is preferred in common fund cases because it permits courts to grant fees "in a manner that rewards counsel for success and penalizes it for failure." *Rite Aid Corp. Sec. Litig.*, 396 F.3d at 300 (*quoting Prudential*, 148 F.3d at 333). The lodestar method, by contrast, is normally applied in statutory fee shifting cases and is designed to ensure that counsel undertaking socially beneficially litigation

receive an adequate fee "irrespective of the monetary value of the final relief achieved for the class." *General Motors*, 55 F.3d at 821. The lodestar method may also be applied "in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method." *Prudential*, 148 F.3d at 333 (*citing General Motors*, 55 F.3d at 821).

The lodestar method is clearly the better approach in this statutory fee shifting case. *See, e.g.*, *Saunders v. Berks Credit & Collections, Inc.*, Civ. A. No. 00-3477, 2002 WL 1497374, at *15-*16 (E.D. Pa. July 11, 2002) (finding lodestar method best for assessing attorneys' fees in class action settlement, and calculating fees under this method alone). The Court employed the lodestar method in class counsel's initial fee petition, and there is no reason to deviate from that analysis here.[3] Therefore, the Court will exercise its discretion and apply the lodestar method to class counsel's request for supplemental attorneys' fees.

**B.   The Lodestar**

To calculate the lodestar, the Court must multiply the number of hours class counsel reasonably worked by a reasonable hourly rate. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). "The result of this lodestar is strongly presumed to yield a reasonable fee." *Saunders*, 2002 WL 1497374, at *15 (*citing Washington v. Phila. County Ct. Com. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996)). Plaintiffs have produced detailed billing records and affidavits in support of a lodestar of $117,517.50, a figure slightly above their requested amount.[4]

---

[3] The Court's reasoning for adopting the lodestar method in the initial fee petition can be found at *Phillips*, 2005 WL 1899504, at *3-*4.

[4] Class counsel's supporting documentation contains one inconsistency; Michael Donahue seeks $73,128 in fees for 220.4 hours of work, but his time schedule documents 221.6

       *1.*    *Hours Expended*

When determining the hours reasonably expended, a court should review the time charged and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Maldonado*, 256 F.3d at 184 (citation and quotation omitted). A court may also deduct hours that have been inadequately documented. *Hensley,* 461 U.S. at 433. Here, class counsel have submitted detailed time and activities schedules, which contain computer entries made contemporaneously with the work performed. (*See* Pls.' Suppl. Mot. Ex. A2 (Donahue Schedule), Ex. C1 (Gould Schedule), Ex. D1 (Landau Schedule), Ex. E1 (Weishaupt Schedule), Ex. F1 (Caulk Schedule), Ex. G1 (Derickson Schedule), Ex. H1 (Murphy Schedule), Ex. I1 (Retz Schedule).) Each schedule lists in chronological order the tasks performed by the attorney or paralegal and the amount of time devoted to these tasks. (*Id.*) The schedules show that, from September 17, 2003 through June 2, 2005, class counsel expended 393.1 hours litigating this matter. (*Id.*)

          a.    Time Spent Determining Remedy for Cancelled Fairness Hearing

Defendants assert that the Court should deduct 21.4 hours for the time spent determining a remedy for class members who appeared in court on December 20, 2004 for a cancelled fairness hearing. (Defs.' Objections at 2-3.) Plaintiffs respond that such fees were reasonable and necessary and that class counsel was required to spend time developing a remedy for the affected class members solely because of Defendants' failure to timely notify class members of the rescheduling of the hearing. (Pls.' Reply in Supp. of Petition for Supplemental Fees [hereinafter "Pls.' Reply"] at 2.) Although the parties negotiated a remedy whereby class members who had appeared for the

---

total hours. (Pls.' Suppl. Mot. Ex. A (Donahue Aff.) ¶ 10, Ex. A2 (Donahue Schedule).) The Court utilizes the 221.6 hours noted on Mr. Donahue's contemporaneous time schedule in calculating the lodestar.

cancelled hearing were provided $10 or their actual transportation costs, the parties could not agree on who should bear this expense. (Defs.' Objections at 2.) Following a telephone conference on January 12, 2005, the Court entered an order directing that the parties equally share the cost of the remedy. (Order of Jan. 13, 2005.) The Court finds it is similarly equitable that the parties each bear their own costs and fees related to this incident. Accordingly, the Court eliminates fees incurred in developing the aforementioned remedy and therefore reduces class counsel's total time by 10.7 hours.[5]

       b.   Time Spent on Unnecessary Matters

Defendants also argue that the Court should decline to award fees to Plaintiffs' counsel for "time spent on unnecessary matters." (Defs.' Objections at 3-5.) Defendants object to: (1) time spent by lawyer Richard Weishaupt resolving an issue with the Department of Public Welfare ("DPW"); (2) time spent creating a computer database to track claims; (3) time spent reviewing files and documents and other "clerical work"; and (4) time spent handling telephone calls with class members. (*Id.*) The Court addresses each objection in turn.

As explained by Plaintiffs, to be eligible for class relief under the Agreement, class members must document that they participated in a qualified training program or received $500 in welfare benefits within six months before they started work. (Pls.' Reply at 3.) Because of Mr. Weishaupt's familiarity with the senior DPW officials, he was selected to obtain this essential eligibility information from the DPW. (*Id.*; *see also id.* Weishaupt Decl.) Obtaining this information was vital to securing relief for class members, and therefore the hours spent on this matter were reasonable,

---

[5] Specifically, the Court reduces Mr. Donahue's time by 5.4 hours, Mr. Gould's time by 2.2 hours, and Ms. Landau's time by 3.1 hours.

necessary, and are included in calculating the lodestar.

Turning to the computer database, class counsel deemed one necessary given the factual variations among the approximately 5,000 class members' claims, the multiple ways class members may qualify for the EID, the changing amount of the EID over time, and the necessity of monitoring the applicable four-year time clock. (Pls.' Reply at 4-5.) The Court finds that the hours class counsel spent developing and creating this database were reasonable and necessary, especially in light of the complexities involved in securing relief for members of the class. Accordingly, all hours spent developing a computer database are included in calculating the lodestar.

Similarly, given the importance of assessing each class member's claim on an individualized basis, the time spent by class counsel reviewing client's documents and files was reasonable and necessary in determining class members' eligibility for relief. Defendants' characterization of this review of files and documents as "clerical work" is inaccurate. The Court finds, however, that attorney supervision of class mailings completed by receptionists is clerical in nature and thus reduces attorney Ruthellen Landau's time by 3.8 hours to eliminate fees for this activity. Accordingly, all recorded hours spent reviewing documents and files are included in calculating the lodestar, but 3.8 hours spent supervising receptionists with class mailings are excluded.

The Court also finds that the time class counsel spent handling telephone calls with class members was reasonable and necessary. As Plaintiffs note, communication with clients is an activity normally handled by attorneys. (*See* Pls.' Reply at 6.) Indeed, clients rightly expect to be able to speak directly with their attorneys. Although Defendants highlight the fact that paralegals were trained to handle class calls (and indeed handled some of the class calls), Plaintiffs respond that the high volume of other work coupled with a lack of resources precluded paralegals from handling all

class calls. (Defs.' Objections at 5; Pls.' Reply at 6.) Given the complicated nature of assessing and obtaining relief in this case, timely legal communication with class members was a necessary and reasonable activity for attorneys to perform. Accordingly, all the hours spent handling class calls are included in calculating the lodestar.

### c. Redundant Activities

Defendants further object to fees for alleged redundant activities, such as staffing meetings and phone calls with multiple attorneys. (Defs.' Objections at 5-6.) Plaintiffs respond that the complexity of issues which remained to be resolved after the Agreement was reached in September 2003 mandated that multiple attorneys participate at meetings. (*See* Pls.' Reply at 6-7.) In particular, a rent calculation form to determine relief for individual class members had to be designed that: (1) made the qualifying events clear, (2) made calculations of the overcharge easily reviewable, (3) kept track of the four different time clocks, and (4) took into account this variety of information for each qualifying family member. (*Id.* at 7.) The Court finds that utilizing multiple attorneys for these activities and negotiations with opposing counsel was reasonable. However, the Court finds that the hours charged by Ms. Landau and Mr. Gould for telephone calls made with lead counsel Mr. Donahue to opposing counsel or to the Court are redundant and therefore are excluded. (*See* Pls.' Suppl. Mot. Ex. A2 (Donahue Schedule), Ex. C1 (Gould Schedule), Ex. D1 (Landau Schedule).) Accordingly, only the time that Mr. Donahue charged for making these calls is included in calculating the lodestar, and 3.2 hours are deducted to reflect the overstaffing of these conference calls.[6]

---

[6] Specifically, the Court reduces Mr. Gould's time by 1.9 hours and Ms. Landau's time by 1.3 hours.

Other than the reduction of 17.7 hours noted above, the Court finds that the remaining hours have been sufficiently documented and further holds that they were not excessive, redundant, or otherwise unnecessary. Particularly given the complexity of the issues and the procedures developed to ensure that class members received the relief secured by the Agreement, the remaining hours documented by Plaintiffs' counsel were reasonable. Accordingly, the Court deems that class counsel reasonably expended 375.4 hours from September 17, 2003 through June 2, 2005.

        2.      *Hourly Rates*

Having determined the number of hours to be used for the lodestar, the Court must now examine whether the requested hourly rates are reasonable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The reasonable hourly rate is calculated according to the prevailing or current market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Furthermore, although this case dates back to the year 2000 and the work at issue in this petition dates back to the year 2003, the Court will employ the 2005 market rates for class counsel. *See Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) ("When attorneys' fees are awarded, the current market rate must be used. The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed."). Determining a reasonable hourly rate involves comparing the experience and skill of the fee petitioner's attorneys with lawyers of reasonably comparable skill, experience, and reputation. *Rode*, 892 F.2d at 1183 (citations omitted). Courts in this District frequently look to the Community Legal Services, Inc.'s fee schedule ("CLS fee schedule") as a fair reflection of prevailing market rates. *Maldonado*, 256 F.3d at 187 (describing CLS fee schedule with approval); *see also Rainey v. Phila. Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993) ("The CLS fee schedule has been approvingly cited by the Third Circuit

as being well developed and has been found by this Court to be a fair reflection of the prevailing market rates in Philadelphia.") (citation omitted).

The majority of Plaintiffs' legal work was performed by Michael Donahue, an eighteen-year veteran of Community Legal Services ("CLS"). (Pls.' Suppl. Mot. Ex. A (Donahue Aff.) ¶ 1.) He has extensive litigation experience in federal court and has prevailed in twelve class actions. (*Id.* Ex. A ¶ 5.) Moreover, he has successfully prosecuted approximately 300 cases involving the federal housing regulations. (*Id.* Ex. A ¶ 6.) Consistent with the most recent CLS fee schedule, CLS has recently increased Mr. Donahue's hourly billing rate to $330 per hour. (*Id.* Ex. A ¶ 9; *see also id.* Ex. B5 (Memo to Donahue Setting Hourly Rate).) Defendants object to this new rate of $330 for Mr. Donahue, arguing that the rate was changed (from $300 to $330 per hour) on June 9, 2005, after his work on this case concluded. (Defs.' Objections at 6.) However, as noted above, the Court must use the current market rates of class counsel at the time of the fee petition, not the rates in effect at the time the work was performed. *See Lanni*, 259 F.3d at 149. The Court finds this rate reasonable, not only because it derives from the CLS fee schedule, but also because it reflects Mr. Donahue's excellent record of skill and experience.

Substantial additional work was completed by two other attorneys at CLS, George Gould and Ruthellen Landau. Mr. Gould has been a member of the Pennsylvania State Bar and an employee at CLS since 1970. (*Id.* Ex. C (Gould Decl.) ¶¶ 1-3.) For the past thirty-five years, he has specialized in the area of housing programs and has litigated numerous class actions concerning the rights of plaintiffs in such programs. (*Id.* Ex. C ¶¶ 3-4.) Ms. Landau has been employed by CLS since September of 1998. (*Id.* Ex. D (Landau Aff.) ¶ 1.) All her cases have been in the public housing unit, and she has litigated approximately sixty federal matters. (*Id.* Ex. D ¶¶ 2-3.) CLS has

set Mr. Gould's rate at $400 per hour and Ms. Landau's rate at $200 per hour. (*Id.* Ex. C ¶ 9, Ex. D ¶ 5; *see also id.* Ex. B6 (Memo to Gould Setting Hourly Rate), Ex. B7 (Memo to Landau Setting Hourly Rate).) These rates are commensurate with the CLS fee schedule and the relative experience of these attorneys. (*See id.* Ex. B2 (CLS Fee Schedule Effective November 2003).) Therefore, the Court finds them reasonable.

Richard Weishaupt, another senior attorney at CLS, also completed work on this case by helping to obtain information from the DPW. A member of the Pennsylvania State Bar, Mr. Weishaupt has been employed by CLS for thirty years. (*Id.* Ex. E (Weishaupt Aff.) ¶¶ 3-4.) He specializes in class action litigation in the health and public benefits area and has litigated hundreds of cases in federal and state courts. (*Id.* Ex. E ¶ 2.) CLS has set Mr. Weishaupt's rate at $400 per hour. (*Id.* Ex. E ¶ 9; *see also id.* Ex. B8 (Memo to Weishaupt Setting Hourly Rate).) The Court finds this rate reasonable, based on the CLS fee schedule and the experience and expertise of Mr. Weishaupt.

Three paralegals at CLS assisted with this case by calling class members. (*See id.* Ex. F1, Ex. G1, Ex. H1.) Marion Caulk, a senior paralegal, has been employed by CLS since 1977. (*Id.* Ex. F (Aff. of Marion Caulk) ¶ 1.) Under the supervision of an attorney, Ms. Caulk has advised and represented thousands of clients at administrative hearings during her career at CLS. (*Id.* Ex. F ¶¶ 3-4.) Two additional public housing unit paralegals, Elizabeth Derickson and Ryan Murphy, have been employed by CLS for approximately two years and one year, respectively. (*Id.* Ex. G (Derickson Aff.) ¶ 1, Ex. H (Murphy Aff.) ¶ 1.) Ms. Derickson has advised and represented more than 400 clients at administrative hearings and Mr. Murphy has advised and represented more than 250 clients at administrative hearings. (*Id.* Ex. G ¶¶ 3-4, Ex. H ¶¶ 3-4.) CLS has set Ms. Caulk's

rate at $120 per hour, and Ms. Derickson's and Mr. Murphy's rate at $75 per hour. (*Id.* Ex. F ¶ 6, Ex. G ¶ 6, Ex. H ¶ 6; *see also id.* Ex. B9 (Memo to Caulk Setting Hourly Rate), Ex. B10 (Memo to Murphy Setting Hourly Rate), Ex. B11 (Memo to Derickson Setting Hourly Rate).) Because these rates are commensurate with the CLS fee schedule and the relative experience of these paralegals, the Court finds them reasonable.

Finally, a law student from Temple University, Margaret Retz, assisted with this case by calling class members. (*See id.* Ex. I1.) The Court holds that legal work completed by law students should also be valued on a reasonable per hour basis. *See, e.g.*, *Dorfman v. First Boston Corp.*, 70 F.R.D. 366, 374 (E.D. Pa. 1976). This approach is consistent with the CLS fee schedule, which includes an entry for law students. (Pls.' Suppl. Mot. Ex. B2 (CLS Fee Schedule Effective November 2003).) Ms. Retz worked as an intern at CLS full-time during the summer of 2004 and part-time during the 2004-05 school year, during which time she advised and represented more than 200 clients at administrative hearings. (*Id.* Ex. I (Retz Aff.) ¶¶ 3, 5-6.) CLS has set Ms. Retz's rate at $120 per hour. (*Id.* Ex. I ¶ 9; *see also id.* Ex. B12 (Memo to Retz Setting Hourly Rate).) Given the academic credentials and work experience of Ms. Retz, the Court finds this rate reasonable, even though it falls at the upper end of CLS' fee schedule range for law students.

Accordingly, the Court finds no grounds to reduce any of the hourly rates charged in this matter.

### 3. Hours Multiplied by Rates

Multiplying the documented hours class counsel reasonably spent by the reasonable hourly rates charged, the Court arrives at a lodestar of $112,455.50. This figure is the sum of $71,346 for Mr. Donahue (216.2 hours at $330 per hour), $20,840 for Mr. Gould (52.1 hours at $400 per hour),

$15,160 for Ms. Landau (75.8 hours at $200 per hour), $2,480 for Mr. Weishaupt (6.2 hours at $400 per hour), $624 for Ms. Caulk (5.2 hours at $120 per hour), $285 for Ms. Derickson (3.8 hours at $75 per hour), $352.50 for Mr. Murphy (4.7 hours at $75 per hour), and $1,368 for Ms. Retz (11.4 hours at $120 per hour).

### IV.    CONCLUSION

For the reasons stated above, the Court finds that from September 17, 2003 through the effective date of the Agreement on June 2, 2005 Plaintiffs incurred reasonable attorneys' fees in the amount of $112,455.50. Accordingly, class counsel's supplemental motion is granted, and Plaintiffs are awarded $112,455.50 in attorneys' fees.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICIA PHILLIPS, et al.,** | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **PHILADELPHIA HOUSING** | : | **No. 00-4275** |
| **AUTHORITY, et al.,** | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this **20th** day of **December, 2005**, upon consideration of Plaintiffs' Supplemental Motion for Award for Attorneys' Fees (Document No. 231), Defendants' responses thereto (Document Nos. 233 & 235), Plaintiffs' reply thereon (Document No. 234), and for the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion is **GRANTED** as follows:

1. Class counsel are awarded $112,455.50 in attorneys' fees for work performed in this matter from September 17, 2003 through June 2, 2005.

2. Defendants shall pay class counsel this sum within three days of the date on which this Order becomes final and non-appealable.

BY THE COURT:

_____
Berle M. Schiller, J.